**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELSEVIER INC. and ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>NAXLEX PREP LLC; NAXLEX GLOBAL, LLC; GEOFFREY KIMANG'A (aka KIMANG'A GEOFFREY, GEOFFRY GEKONGE KIMANG'A, KIM G GEGE), and DOES 1–20,<br><br>Defendants. | Civil Action No.<br><br>COMPLAINT FOR:<br><br>1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*);<br><br>2. TORTIOUS INTERFERENCE WITH CONTRACT<br><br>3. FRAUD<br><br>DEMAND FOR JURY TRIAL |

Elsevier Inc. ("Elsevier") and Assessment Technologies Institute, L.L.C. ("ATI") (collectively, "Plaintiffs") by and through their undersigned counsel, hereby file their Complaint against Defendants Naxlex Prep LLC, Naxlex Global LLC, Geoffrey Kimang'a (aka Kimang'a Geoffrey, Geoffry Gekonge Kimang'a, Kim G Gege), and Does 1–20 (collectively, "Defendants"). Plaintiffs allege as follows on personal knowledge relating to themselves and on information and belief as to all other matters.

## INTRODUCTION

1. This case centers around an escalating academic integrity and public health threat masked as an online exam-preparation business. Defendants operate a commercial piracy and test cheating business that unlawfully reproduces and sells unauthorized copies of Plaintiffs' highly confidential and copyrighted assessment content, which nursing schools across the country rely on to evaluate basic academic skills of prospective nursing students and assess current nursing students' understanding of core nursing concepts and skills necessary to graduate, seek a license,

and, ultimately, practice as a nurse. Defendants also operate a "proxy test-taking" service through which they serve as paid stand-ins for students, secretly taking proctored or otherwise secured exams in the students' names, while making it appear that the students themselves are completing the exams.

2. Defendants' conduct is unlawful, deliberate, and dangerous. By copying, distributing, selling, and preparing derivative works based on Plaintiffs' assessment content, Defendants engage in flagrant copyright infringement, which causes significant harm to Plaintiffs' respective businesses and reputations in the education communities they serve. Separately, Defendants cause great harm to Plaintiffs, nursing programs, and patient safety by selling and providing proxy test-taking services designed to evade carefully calibrated test security systems employed with Plaintiffs' assessments, and deceiving Plaintiffs as well as nursing schools.

3. The consequences here are grave. And they have a detrimental impact beyond just Plaintiffs. When Defendants provide nursing students with unlawful access to restricted assessment content, including secure exam questions and answers, or when Defendants' proxy test takers deceptively pose as nursing students taking nursing exams, Plaintiffs, educational institutions, patients, and the public are misled into believing those students possess knowledge, judgment, and competency they may well not actually possess. Defendants' deception not only defrauds Plaintiffs—it undermines nursing education and presents an urgent public health and patient safety risk.

4. Indeed, Plaintiffs' nursing education and assessment content is specifically designed to help nursing institutions evaluate whether students are adequately prepared to enter nursing programs and whether nursing students have mastered necessary skills to practice as future nurses, apply critically important clinical judgment, administer safe patient care, and respond to

real-world health issues. Defendants' unlawful operation threatens to corrupt that process at its core. When unprepared nursing candidates, who cheat on their exams, enter a clinical setting where patients depend on competent care, the health and safety risk is alarming. Defendants must be stopped.

5. Plaintiffs are leading providers of educational resources and assessment content used by thousands of nursing schools across the country. Nursing schools purchase licenses to Plaintiffs' educational content for use in their nursing program curricula and administer ATI's and Elsevier's exams to evaluate their students' understanding and application of subjects and skills that are essential for the nursing profession. Plaintiffs' clients depend on them to produce valuable and reliable resources that their faculty can rely on to assess their students' competency.

6. ATI publishes many different types of valuable and respected nursing education learning materials and proprietary assessments designed to help nursing programs assess, analyze, and improve student performance from admission through graduation and licensure readiness. These assessments include ATI exams (i) used by nursing programs to assess whether candidates are prepared for admission into nursing school, called the Test of Essential Academic Skills (i.e., the "TEAS" exam); (ii) administered to students throughout the nursing program curriculum to determine whether students are mastering core nursing concepts; and (iii) used by nursing schools at the end of the nursing program to assess whether their graduating nursing students are ready to take the National Council Licensure Examination ("NCLEX"), the licensure test required for the practice of nursing, upon completing their studies (i.e., "Comprehensive Predictor" exams for students enrolled in Registered Nurse ("RN") and Practical Nurse ("PN") programs).

7. HESI is Elsevier's nursing review and testing solution, which includes valuable and respected assessments designed to help nursing programs assess, analyze, and improve student

performance from admission through graduation and licensure readiness. Elsevier's HESI Admission Assessment (i.e., "A2") assesses whether candidates are prepared for admission into nursing school. Elsevier also publishes HESI RN and PN exit exams that are used to assess whether nursing students are ready to take the NCLEX licensure examination (i.e., "E2").

8. Plaintiffs' assessments are proprietary, confidential, and securely controlled by Plaintiffs. Access to these assessments is limited to participating educational institutions and authorized examinees, and assessments are administered directly through nursing schools or in a controlled, proctored environment.

9. Defendants own, operate, and/or control Naxlex.com and potentially other affiliated domains (collectively, the "Infringing Sites"). Naxlex.com is devoted to the sale of illegal copyrighted content that infringes Plaintiffs' intellectual property rights and the sale of proxy test-taking services through which Defendants fraudulently take Plaintiffs' assessments on behalf of student examinees. Defendants knowingly and intentionally reproduce Plaintiffs' copyrighted assessment content, which is protected by U.S. copyright registrations, and distribute illegal copies of such content to consumers, as well as offer their illegal and fraudulent proxy test-taking services, all for a fee. Defendants do so for their own lucrative profit, and at the expense of Plaintiffs, students, educational institutions, and the public at large.

10. Although Defendants aggressively market their unlawful services to students online, Defendants take steps to conceal their identities and locations. This is not surprising, as Defendants know they are operating an illegal business.

11. Nonetheless, through investigation, Plaintiffs believe that Naxlex Global LLC is the entity through which payments to Naxlex.com are made, Naxlex Prep LLC is an affiliated

entity involved in Defendants' scheme, and Geoffrey Kimang'a (using other aliases) is the individual, or at least one of the primary individuals, behind and responsible for the scheme.

12. Based on information on his social media profiles and business filings, and through the use of a Kenyan phone number in connection with Naxlex.com, Plaintiffs believe that Defendant Kimang'a is located in Kenya. However, Plaintiffs do not currently know Defendant Kimang'a's true address in Kenya, nor do Plaintiffs know the true addresses of Naxlex Global LLC or Naxlex Prep LLC, including because their corporate filings do not provide that information. Further, Plaintiffs do not currently know the true identity or location of the Doe Defendants.

13. Attempts to stop Defendants without burdening the court system have been unsuccessful. It is now apparent that Defendants have no intent on reforming their illegal activities, and Plaintiffs must seek court intervention to shut down this unlawful and damaging conduct. Plaintiffs have sent infringement notices to the Infringing Sites, but Defendants continue to infringe. In some instances, Defendants respond by stating that they will take down the content; however, it has become clear that, even in these instances, Defendants repost the same infringing content at different URLs or through newly created webpages.

14. Defendants' business is also expanding, and their misconduct presents recent and escalating threats to public health and patient safety, as well as to Plaintiffs. As recently as August 17, 2026, Defendants uploaded "Ati Rn Comprehensive Predictor Proctored Exam Retake 1 2026," "RN Comprehensive Predictor 2026 Proctored Exam," and "Ati RN comprehensive predictor 2026 proctored exam"; on August 13, 2026, Defendants uploaded "ATI RN Comprehensive Predictor 2026 Proctored Exam"; and on August 10, 2026 Defendants uploaded "Hesi RN Exit (BSN) 2026

Proctored Exam" and "RN Hesi Exit Proctored Exam." Each of these individual uploads alone contains over 100 questions.

15. In addition, as shown in the image below, on July 16, 2026, Naxlex.com boldly advertised, "Your TEAS QBank Just Got Better!"; "[w]e've added the latest TEAS exam questions," including "[n]ew questions from recent exams" and "[i]mproved answer explanations."




16. Defendants are not only continuing their infringement, but are actively updating and expanding their unlawful offerings, making immediate intervention necessary to prevent further dissemination of compromised nursing exam materials, and confirming that they will not stop without a court order.

17. Traffic has also increased on Naxlex's website indicating its business is growing and gaining more traction. Data from August 14, 2026 shows that Naxlex.com has over 320,000 monthly visits, up by 13.41% from June 2026.

18. Plaintiffs recently identified hundreds of verbatim or near verbatim registered assessment questions and answers that Defendants copied and distributed via Naxlex.com. This is just the tip of the iceberg. Defendants undoubtedly have more infringing content, which Plaintiffs expect will be uncovered in discovery.

19. In addition to selling restricted assessment content, Defendants or their agents fraudulently pose as prospective or current nursing students taking Plaintiffs' assessments, in clear violation of Plaintiffs' terms of use, remotely gain access to students' protected computers, and take nursing exams on behalf of such students for Defendants' lucrative commercial profit. Defendants' outrageous conduct undermines the integrity of Plaintiffs' educational materials and restricted assessments products and creates the false impression that students have succeeded in their exams and are thus ready for nursing school or qualified to practice as a nurse, which jeopardizes the reliability of Plaintiffs' assessments and harms Plaintiffs' relationships with their nursing program customers that rely on the predictive value of such assessments. Plaintiffs' customers have expressed serious concerns about Defendants services and the validity of Plaintiffs' assessments to evaluate student knowledge as a result of Defendants illegal infringement and proxy services.

20. Moreover, once Plaintiffs' assessment content is unlawfully copied and sold by Defendants, it may be further reproduced by and widely distributed to others (e.g. via online platforms, discussions forums, and the like), and used by others engaged in similar illegal activity, thereby expanding the scope and harm from the initial content theft. Consequently, a single

unauthorized reproduction and disclosure of any of Plaintiffs' assessments will result in multiplied, downstream damaging impacts to Plaintiffs.

21. Plaintiffs seek equitable and monetary relief, as well as attorneys' fees, as a result of Defendants' unlawful conduct. Without the Court's intervention, Defendants will continue to operate and profit from their illegal business, cause irreparable harm to Plaintiffs, and threaten public health and patient safety.

## PARTIES

### The Plaintiffs

22. Plaintiff Elsevier is a Delaware corporation with its principal place of business at 101 Park Avenue, 24th Floor, New York, New York 10178. Elsevier is a leading academic publisher and provider of scientific, technical, and health education content, including but not limited to its HESI A2 and E2 assessments.

23. Plaintiff ATI is a Delaware limited liability company with its principal place of business at 11161 Overbrook Road, Leawood, Kansas 66211. ATI is a leading provider of data-driven nursing education resources and assessment, including but not limited to its TEAS exam and Comprehensive Predictor assessments.

### The Defendants

24. Defendant Naxlex Prep LLC was incorporated in Wyoming on June 8, 2026 with the assistance of New York-based Distributed Inc., doing business as Doola.com, which states that it provides U.S. LLC formation services. With this corporate filing, instead of providing an address for Naxlex Prep LLC, the papers provide what appears to be a sham address, i.e., the address of the "Wyoming Corporate Office." To date, Plaintiffs have not been able to determine Naxlex Prep LLC's true physical address or principal place of business.

25. Defendant Naxlex Global LLC was incorporated in Delaware on January 5, 2026. To date, Plaintiffs have not been able to determine Naxlex Global LLC's true physical address or principal place of business.

26. Defendant Kimang'a owns, operates, and/or controls Naxlex. He is believed to reside in Kenya.

27. Defendants Does 1–20 are individuals or entities whose identities are presently unknown and who own, operate, and/or control Defendants' infringing and fraudulent business.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiffs' federal claim. Exercising jurisdiction over the state-law claims will avoid unnecessary duplication of actions and supports the interests of judicial economy, convenience, and fairness.

29. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a) because Defendants conduct, transact, and/or solicit business in this District, including business related to the acts complained of in this case; tortiously injured Plaintiffs in this District; and/or a substantial part of the acts of infringement or other events and omissions complained of herein have occurred in this District.

30. The Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1) and/or (3) because Defendants intentionally direct their infringing conduct to the State of New York, transact business in and with New York consumers, and offer and sell infringing materials and illicit services in New York, including via Naxlex.com, a highly interactive website

that is continuously accessible to, and targets, sells, and/or delivers goods and services to consumers in New York. These New York consumers can communicate with Defendants through chat features, browse listings of infringing works, select subscription packages, and complete transactions online, such as through Stripe or CashApp. From New York, Plaintiffs' agent purchased a subscription to Naxlex.com and viewed infringing content. Also, Defendants cause injury to Plaintiffs in New York, including Elsevier, where it has its principal place of business. In addition, ATI has 175 institutional customers in New York, 40 of which are in New York City, and the vast majority have purchased ATI's proctored exams. Defendants further contracted with a New York-based service to recently form Naxlex Prep LLC. Defendants sell their unlawful goods and services to U.S. nursing students, and New York is in the top three U.S. states with the highest number of higher education students.[1] Therefore, Defendants direct their unlawful conduct to, and cause injury in, New York.

31. Alternatively, the Court has personal jurisdiction over at least Defendant Kimang'a, who is believed to be located in Kenya, pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long arm statute. Geoffrey owns, operates and/or controls Naxlex.com, which targets and is continuously accessible to users in the United States, i.e., U.S. nursing students. Defendants also rely on U.S. companies to operate Naxlex.com, including NameCheap as a domain registrar and Stripe as a payment processor. Further, Defendants derive revenue from interstate or international commerce, including through sales of infringing copies of Plaintiffs' assessment content and proxy test-taking services to U.S. students.

[1] Hanson, Melanie, "College Enrollment & Student Demographic Statistics," Aug. 31, 2024, https://educationdata.org/college-enrollment-statistics.

## FACTUAL ALLEGATIONS

### a. Plaintiffs' Businesses and the Confidential Nature of Their Assessments

32. Plaintiffs are leading education content and technology companies in the United States that provide copyright-protected nursing education resources and assessments used by thousands of nursing schools in the United States. Plaintiffs provide products and services used by nursing programs to help their students master core nursing concepts, successfully graduate from nursing school, develop into practice-ready nurses, succeed on the NCLEX exam, and ultimately provide safe and quality patient care. Plaintiffs' assessments are designed by expert test developers, psychometricians, and data scientists to evaluate students' academic skills, nursing knowledge, NCLEX readiness, and ability to practice safely as nurses. These include assessments administered by nursing schools in secure settings and test critical subject areas essential to nursing practice and covered on the NCLEX.

33. A nursing student may sit for the NCLEX only if the student's nursing program determines that the student is ready and approves the student to do so. Plaintiffs' assessments are a critical part of that readiness evaluation, and nursing schools rely on those assessments when deciding whether a student has demonstrated the knowledge and competence necessary to proceed to licensure testing.

34. The integrity of Plaintiffs' assessments is essential to Plaintiffs' respective businesses and client relationships, and the nursing schools that rely on those assessments. State boards of nursing consider NCLEX pass rates when evaluating whether nursing schools may continue operating. If too many graduates fail the NCLEX, a school may face serious regulatory consequences, including the potential loss of its license. Schools therefore rely on Plaintiffs' assessments as independent, valid measures of student competency and NCLEX readiness.

35. Plaintiffs have each invested millions of dollars collaborating with nurse educators, content experts, psychometricians, test and software developers, and other professionals who have spent thousands of hours developing and commercializing their proprietary materials, including Plaintiffs' assessments that Plaintiffs deliver to their nursing school clients and their students. Plaintiffs' brands have come to be synonymous with the highest quality test preparation, assessment, and review services for nursing schools and their students.

36. Plaintiffs go to great lengths to ensure the reliability of their assessments, including thorough psychometric evaluation and analysis to ensure accuracy, fairness, validity, and quality. Plaintiffs also employ measures to protect the security of their assessments, including controls and use of numerous technical and operation security features designed to safeguard against test misconduct. Such efforts and investments are essential for fulfilling Plaintiffs' clients' expectation that Plaintiffs' assessments will serve as a valid and reliable indicator of a student's mastery of the relevant subject matter and, ultimately, readiness for the NCLEX. Plaintiffs' safeguards are also critical to ensuring that exam results reflect each student's own knowledge and competence—not through improper assistance, unfair advantage, or advance access to Plaintiffs' protected questions and answers.

37. Plaintiffs' assessments are not made available to the general public. Indeed, they are only available under paid license by Plaintiffs, subject to strict use provisions. In addition, Plaintiffs' assessments are hosted on and delivered only through their proprietary platforms, including sometimes in proctored testing platforms, where students acknowledge and agree not to make copies or disclose any portion of the assessments, along with other measures designed to ensure the confidentiality of the assessments and integrity of the testing process and related results.

38. Exams are required to be proctored by registered proctors who are bound by certain terms and conditions. Proctors are also required to verify names of test takers, remain physically present (if at a testing center) or available online (for remotely proctored exams), for the entirety of the test session.

39. Prior to taking a proctored exam, students are required to acknowledge their understanding of the rules and restrictions applicable to the exams, including signing and accepting attestations that the exam content is confidential. The attestations also describe other prohibited uses including not permitting any other person to access their account, as described in further detail below.

40. In addition, subject matter experts, test item writers, and other industry experts that are engaged with Plaintiffs to develop new material, are required to sign non-disclosure agreements. Plaintiffs also have internal security teams that are devoted to ensuring the validity and reliability of Plaintiffs' assessments.

**b. <u>Plaintiffs' Copyrights</u>**

41. Plaintiffs own or exclusively control the copyrights in their respective works described in Exhibit A, which are registered with the U.S. Copyright Office (the "Authentic Works"). Given the blatantly illegal nature of Defendants' conduct, and the fact that Naxlex.com, and potentially other Infringing Sites, include listings for many of Plaintiffs' works beyond the Authentic Works, Exhibit A is a non-exhaustive, representative list that may be updated as this case proceeds.

42. Plaintiffs have registered the Authentic Works as secure tests or groups of secure test items (i.e., questions and answers) using the U.S. Copyright Office's secure test procedure for the registration of "nonmarketed test(s) administered under supervision at specified centers on

specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration," set forth in 37 C.F.R. § 202.20 (the "Secure Test Procedures").

43. The Copyright Office's Secure Test Procedures allow Plaintiffs to register their assessments without having to provide a public copy of the exam questions and answers and to preserve the security and confidentiality of such content.

**c. <u>Defendants' Willful Misconduct</u>**

**i. Defendants Sell Unauthorized Exam Materials, Which Infringe Plaintiffs' Copyrights**

44. Defendants own, operate and/or control Naxlex.com, and likely other Infringing Sites. The email addresses and other contact information known to be associated with Defendants are identified in Exhibit B hereto. Defendants engage in and profit from the reproduction, distribution, and sale of, and the creation of derivative works based on, unauthorized digital copies of Plaintiffs' assessments used by nursing schools. Defendants have not been granted any license by Plaintiffs and are not authorized to reproduce, distribute, sell, or prepare derivative works based on Plaintiffs' exam content or other educational materials, including the Authentic Works, for any purpose.

45. On Naxlex.com, Defendants urge students to "[g]ive yourself every advantage to pass your [n]uring exams."[2] Defendants offer paid plans for access to large "libraries" of nursing questions and answers for both ATI and HESI exams, with "[u]nlimited access to a vast question bank with over 1 million questions."[3]

---

[2] https://www.nursing.naxlex.com.
[3] *Id.*

46. Among other things, Defendants sell the following ATI TEAS resources: "study guides with detailed explanations"; "practice questions with well-detailed explanations"; [p]erformance tracking" and "[d]etailed performance analysis"; "1250 questions with ***99% real-exam prediction accuracy***." (emphasis added).[4] Defendants claims that "over a million nurses have trusted us for their nursing entrance exam preparation." Defendants offer ATI TEAS resources for $69 for 30 days of access, or for $149, for 90 days of access.[5]

47. Defendants also sell "Nursing Exit Exams" with over 70,000 "practice questions" and 20,000 "exam sets," according to their website. Defendants advertise "Sign up in minutes. Try Naxlex Nursing risk-free." [6] Defendants sell this content for $79 for 30 days access, or $159 for 90 days access, with the infringing materials including both Registered Nurse exams ("RN Exams") and Licensed Practical Nurse ("LPN") exams. According to their website, Defendants' "basic" subscription plans give students access to "2M+ question[s]."[7]

48. Defendants obtain, copy, upload to their website, and then sell Plaintiffs' copyrighted assessment content, and derivatives thereof, without Plaintiffs' approval, permission, or any form of authorization. Defendants provide Plaintiffs' assessment materials that are not publicly available, let alone authorized for student purchase or distribution. As detailed above, these materials are intended to be kept confidential and are only accessible to authorized nursing students while they are sitting for actual exams, whether in-person at a nursing school or secure testing location or online via a remotely proctored online platform.

[4] https://www.naxlex.com/teas-test-prep.
[5] *Id.*
[6] https://www.naxlex.com/nursing/.
[7] *Id.*

49. Plaintiffs have recently conducted test purchases to confirm that Defendants copy and distribute their respective copyrighted content, including substantial content in the Authentic Works. Such purchases occurred through subscriptions purchased on Naxlex.com. While Defendants claim that they provide "study materials," shockingly, much of the material they sell is identical or nearly identical to Plaintiffs' assessment questions, including those in the Authentic Works. Other material is clearly derivative of the Authentic Works.

50. Defendants offer a substantial volume of additional materials across multiple different webpages on Naxlex.com, which Defendants boldly describe as ATI and HESI materials. Plaintiffs have purchased and analyzed only a subset of Defendants' offerings to date. Therefore, the infringement identified so far represents only a portion of Defendants' unlawful operation, and discovery is expected to reveal that Defendants' infringement is substantially broader.

**ii. Defendants' Proxy Test-Taking Business Threatens Exam Integrity and Public Safety**

51. Defendants' misconduct extends beyond the sale of stolen exam materials. Defendants also market and sell proxy test-taking services in which Defendant Kimang'a and/or their agents secretly take proctored exams on behalf of students, allowing those students to obtain exam results that falsely appear to reflect their own knowledge and performance.

52. Defendants' proxy test-taking service is brazen. Defendants offer these services for approximately $500 and advertise that customers may pay the fee only after receiving the test results. To carry out this scheme, Defendants remotely access students' laptops during live proctored exam sessions so that Defendants or their agents can control the students' laptops during the exam-taking process while the student appears to be sitting for the exam. Disturbingly, Defendants openly tell students to "pretend" to take the exam to avoid being caught cheating.

53. Defendants' advertise and promote their proxy test-taking online. Defendants just posted on July 1, 2026 that they have "the ultimate exam prep game going on, and we're not just talk about TEAS 7 and HESI A2—we're talking about guaranteed pass rates of 90%."[8] This webpage further explains how the "LockDown Broswer," a secure web application used by educational institutions to prevent cheating during online exams, works and boasts about how Defendants can get around it: "At Naxlex, we're professionally and technically prepared to take the Lockdown exam on your behalf."[9]

54. As further illustrated in the screenshots below[10], Defendants' statements are not ambiguous—they are openly selling a cheating service designed to deceive proctoring systems, circumvent academic-integrity safeguards, and create the false appearance that a student personally completed a critically important nursing exam.



Naxlex

Home Teas Hesi A2 Nursing School Exams Contact

Student Physical Presence

Since we remotely access your device, all you have to do as an examinee is sit back, relax, and watch as we take your nursing exam. Picture yourself getting your nursing exam done without struggling. The most you do when we take your nursing exam is sit in front of your device as we do the work for you. This not only creates confidence but also brings about certainty as you are sure that qualified tutors are taking your exams.



**Pretend While We Take Your Proctored Exam**

As part of the exam process, Naxlex ensures you get the utmost peace of mind during your proctored exam period. We do all the exam work and answer questions correctly, while you just sit in front of the laptop and watch. All this time, you pretend to do the exam, and the monitoring systems will assume you are the one taking the proctored exam. Stress and anxiety are the least of your worries when you hire us to take your proctored exams.

---

[8] https://www.naxlex.com/take-my-lockdown-exam.

[9] *Id.*

[10] *See* https://www.naxlex.com/pay-someone-to-take-my-proctored-exam; https://www.naxlex.com/take-my-proctored-exam; https://www.naxlex.com/pay-someone-to-take-my-nursing-exam; https://www.naxlex.com/take-my-nursing-exam.



Naxlex Home Teas Hesi A2 Nursing School Exams Contact Us

Take a Step and Hire Naxlex to Take Your Nursing Exams

Nursing high-stakes exams such as the NCLEX are a major barrier to licensure and career development. When you hire Naxlex to take your nursing exams, we not only ensure your exams are well done but also guarantee top grades to secure your career. We have a proven track record, with thousands of students commenting on our top-tier services in taking their nursing exams.



Naxlex Home Teas Hesi A2 Nursing School Exams Contact Us

One of the advantages of booking us to take your nursing exams is that we remotely access your laptop. With our many years of experience in online exams, we can virtually access your exam device. We are able to bypass exam monitoring systems without raising suspicion, hence delivering our promise to take your nursing exam. Nothing beats the excitement of overcoming exam system anxiety and panic. Naxlex helps you overcome proctored exam fears remotely as you watch in awe and amazement.

***Student Physical Appearance During Online Exams.***

Someone might ask, "Is my appearance necessary if you take my nursing exams remotely?" We recommend your presence as we take nursing exams for you. Here is the twist: we remotely do the exams for you while you just sit in front of the laptop and watch. This way, the system will automatically assume you are the one taking the exam. You rest and look at your laptop all through as we get the work done for you.

55. Defendants even boast that they have "a proven track record, with thousands of students commenting on our top-tier services in taking their nursing exams."

56. Plaintiffs have confirmed through their investigations that Defendants do not merely advertise proxy test-taking services—they actually provide them. Defendant Kimang'a or Defendants' agents remotely access the examinee's computer with a software program before and during the live proctored exam session. They manipulate or alter the programs on the computer, such as by removing antivirus software or other security features. The examinee logs into Plaintiffs' secure and password-protected testing platforms with Plaintiff-issued credentials that are provided to registered students. Defendants direct the examinee to log-in or click "log-in." Defendants assume and maintain control of the examinee's computer, including for the purpose of "taking" the exam. When the attestation terms and conditions appear, Defendants "accept" them. Defendants thus position themselves inside Plaintiffs' secure testing environment, falsely engaging the proctoring system, and falsely appearing to be the registered student taking the exam.

57. Defendants' proxy test-taking services thus depend on unauthorized or deceptively procured access to protected testing environments, misuse of student login credentials, and false representations to Plaintiffs' servers, nursing schools, and proctoring systems that the student—not Defendants or their agent—is completing the exam.

58. By enabling students to get passing scores through concealed third-party access rather than the students' own knowledge, Defendants threaten the reliability of nursing assessments and creates a serious risk that nursing schools, employers, patients, and the public will be tricked into believing that unqualified or underprepared students possess demonstrated competency they have not actually achieved, posing an alarming risk to patient safety and quality healthcare.

### iii. Defendants Tortiously Interfere with Plaintiffs' Contracts and Induce Student Breaches of Those Contracts

59. Defendants know that they have no right to access Plaintiffs' assessments. Plaintiffs make proctored exams available only within restricted testing environments, only to authorized examinees and institutional users, and only for approved educational testing purposes. Naxlex.com is none of those things. It is a commercial proxy test-taking service that obtains unauthorized access to Plaintiffs' testing platforms by using student credentials and remote access technology to improperly place an undisclosed third party inside Plaintiffs' secure testing platforms to promote cheating and make a lucrative profit.

60. Plaintiffs each have agreements, with all users on their platforms, governing who may access their exams, how account credentials and exam sessions may be used, and what users may and may not do with confidential exam content. Those agreements prohibit the conduct at the very center of Defendants' business: proxy test-taking, credential sharing, unauthorized testing assistance, disclosure of exam content, and commercial use of the testing platforms.

61. Elsevier's Student Conduct Agreement requires the examinee to certify before testing that the examinee is the registered candidate and that "***no one else will assist***" or "take this exam" on the examinee's behalf. (emphasis added). These terms further prohibit an examinee from allowing "any other person, entity, bot, or computer" to take the examination on the examinee's behalf; from using "unauthorized materials, devices, notes, or assistance of any kind"; from communicating with "any person, bot, computer, or device" during the examination; and from "[c]opying, photographing, screenshotting, recording, reproducing, downloading, intercepting, or transmitting any exam content in any form."

62. ATI's Website Terms and Conditions ("ATI's T&C") impose similar contractual restrictions and limitations. Users agree to "protect your username and password," as well as "any access codes and product codes," and "not share them with others, ***allow remote access by any third party***, or permit any unauthorized use of ATI Products or Services." (emphasis added). ATI further requires that any exam, test, assessment, or interactive tool be "utilized and completed only by you," and that the user "will not permit any other person to use ATI resources, or answer any ATI exam, test, or Assessment questions under your name."

63. ATI's T&C also prohibit disclosure of "any portion of ATI Products or Services to any other person or entity," prohibit seeking "unauthorized access to ATI Assessments, Products and Services from third parties," and recognize that ATI materials are "confidential and proprietary" and that unauthorized access or disclosure may cause "serious financial harm to ATI." These terms are publicly available on ATI's website.[11]

64. In addition, the ATI Examinee Attestation ("ATI's Attestation" and with "ATI's T&C," the "ATI Agreements"), which supplements ATI's T&C, and which each examinee must

[11] https://auth.atitesting.com/terms.html.

accept at the time of the test session, explicitly prohibits "engaging third parties from taking the Assessment on your behalf" (proxy test taking or contract cheating)" and "acquiring Assessment content prior to the Assessment, the use of proxy examinees for Assessments, and the use of any technology that may be used in furtherance of violating this Attestation," among other things.

65. Defendants have knowledge of Plaintiffs' contractual terms because Defendants' service is specifically designed to help students circumvent these exam rules. In providing their proxy test-taking service, Defendants also specifically review and/or "acknowledge" such terms after gaining remote access to the examinee's computer.

66. Defendants advertise their illegal service, soliciting students to provide access to Plaintiffs' exams, and walking students through the steps of how to violate Plaintiffs' terms with explicit and detailed instructions. In providing their service, Defendants enter into Plaintiffs' secure testing environments with student credentials, accesses confidential information and active exam sessions using remote access to place themselves or their agents inside platforms that were available to the registered examinee alone. Once inside, Defendants view protected exam content, use Plaintiffs' systems as undisclosed third parties, and complete or assist with exams while appearing to act under the student's identity. By doing so, Defendants intentionally induce students to breach their agreements with Plaintiffs.

67. Defendants' business is built around the very conduct the agreements strictly prohibit and are designed to prevent. It profits by circumventing identity-based access controls, placing unauthorized third parties inside secure testing sessions, exposing confidential exam content to individuals who have no right to see it, and generating exam results that falsely appear to reflect the knowledge and performance of the registered student examinee.

**iv. Defendants Cause Substantial Injury to Plaintiffs**

68. Defendants' conduct causes substantial and ongoing harm to Plaintiffs. Defendants' flagrant infringement steals the fruits of Plaintiffs' creative efforts and substantial investments in its content. Plaintiffs invest substantial time, effort, and resources in researching, developing, creating, maintaining, securing, and administering nursing educational assessments. Plaintiffs' businesses are based on creating this important content and licensing it to nursing schools that rely on the assessments to evaluate whether students are qualified to enter nursing school or have mastered the knowledge and judgment required for completion of their studied and progress toward licensure. By copying and distributing unauthorized versions of those materials, Defendants not only unjustly profit from copying and selling copyrighted material they did not create—they undermine the value of Plaintiffs' assessments.

69. Defendants' sale of unauthorized ATI and HESI materials compromises the integrity of current and future exams by making protected assessment content available to students outside authorized testing channels and before schools can reliably use those materials to evaluate their students' competency. Defendants' conduct also harms Plaintiffs' goodwill and relationships with nursing schools and students who rely on Plaintiffs to provide secure and reliable nursing assessment tools. When unauthorized copies of exam materials are distributed, schools and students may lose confidence in the value and reliability of Plaintiffs' assessments. That reputational harm may cause schools to question whether Plaintiffs' assessment products remain secure and reliable, and may lead schools to reduce or even terminate business relationships with Plaintiffs. Numerous customers of Plaintiffs have communicated serious concerns with Defendants' online distribution and sale of Plaintiffs' assessments. Once Plaintiffs' assessment content is unlawfully copied and sold by Defendants, it may be further reproduced by and widely distributed to others (e.g. via online platforms, discussions forums, and the like), and used by others

engaged in similar illegal activity, thereby expanding the scope and harm from Defendants' initial content theft.

70. Defendants' proxy test-taking services further threaten Plaintiffs' business and the value and security of its assessments by enabling unauthorized third parties to access Plaintiffs' secure testing environment, fraudulently complete exams for students, and generate results that falsely appear to reflect the registered student's own knowledge and test performance. That conduct undermines the purpose of Plaintiffs' assessments, creates a serious risk that schools will rely on inaccurate results when making academic and practice readiness decisions, and damages Plaintiffs' goodwill and relationships with nursing school clients and their students who do not cheat, all of whom rely on Plaintiffs to provide secure, reliable nursing assessment tools. The harm also extends beyond Plaintiffs: when confidential assessment content is made available in advance to examinees, or when a student's exam is completed by someone else, nursing schools, employers, patients, and the public may be led to believe that the student has demonstrated readiness, competence, or skills that the student has not actually shown or acquired. Students who cheat without personally demonstrating the required nursing knowledge and competence may be inadequately prepared to enter clinical settings, respond to real-world health issues, and provide safe patient care, undermining nursing education and posing serious public health and patient safety concerns.

71. Unless enjoined, Defendants will continue to unjustly profit from stealing and selling Plaintiffs' protected works while imposing escalating reputational harm and customer-relations harm on Plaintiffs, and resulting in damage to Plaintiffs, nursing programs, academic integrity, students who act honestly, and, ultimately, patient safety and quality healthcare.

## <u>CLAIMS FOR RELIEF</u>

### Count I - Copyright Infringement (17 U.S.C. §§ 101 *et seq.*)
### Asserted by Plaintiffs Against All Defendants

72. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 71 as if fully set forth herein.

73. Plaintiffs own or exclusively control valid copyrights in the Authentic Works identified in Exhibit A. The Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act of 1976, and they are protected by registrations duly issued by the U.S. Copyright Office to Plaintiffs. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

74. Defendants, without the permission of Plaintiffs and with knowledge of Plaintiffs' copyrights and Defendants' own unlawful conduct, have reproduced Plaintiffs' assessment content in the Authentic Works and prepared derivative works based on that content, and distributed and sold that content to the public. Such conduct constitutes infringement of Plaintiffs' exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1)-(3).

75. Defendants' infringement is willful, intentional, and purposeful, and has been undertaken for commercial gain and in disregard of Plaintiffs' respective rights. Each infringement constitutes a separate and distinct act of infringement.

76. Defendants' unlawful conduct, which is ongoing, has caused and will continue to cause irreparable injury to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. In addition to damages, Plaintiffs seek injunctive

relief, as well as other appropriate equitable relief, as specified below.

**Count II - Tortious Interference with Contract Under Kansas Law**
**Asserted by ATI Against All Defendants**

77. ATI incorporates by reference the allegations in paragraphs 1 through 76 as if fully set forth herein.

78. ATI maintains enforceable agreements, including with examinees registered to take their assessments, through the ATI Agreements. The ATI Agreements govern access to and use of ATI content, including the content at issue in this case.

79. Among other obligations, under ATI's T&C, users agree to protect and not share their usernames and passwords, and not allow remote or unauthorized access by any third party to ATI's products and services. Users further agree that ATI assessments will be utilized and completed only by the users, and that no one else will answer "questions under your name."

80. ATI's Attestation, which supplements ATI's T&C, and which each examinee must accept at the time of the test session, explicitly prohibits "proxy test taking or contract cheating," among other things.

81. Defendants, acting through Kimang'a and/or their agents, have knowledge of the ATI Agreements. Their proxy test-taking service is designed specifically to circumvent ATI's exam rules and the terms in these agreements. Defendants' advertisements for their service make this clear. For instance, Defendants tell students they "bypass exam monitoring systems without raising suspicion." Defendants also review and accept the terms of ATI's Attestation when taking the test on behalf of a student. Doing so is a necessary step to gain access into ATI's secure platform.

82. Defendants intentionally induce students to breach the ATI Agreements, and use of Defendants' proxy test-taking service results in such breach. The service Defendants promote, sell, and provide to students likewise depends on such a breach occurring. Defendants solicit students

to buy their service so students can achieve high scores on their exams, all while "sitting back, relaxing, and watching" while Defendants Kimang'a and/or Defendants' other agents take the exam. No part of Defendants' proxy test-taking service is allowed under the ATI Agreements.

83. In providing their proxy test-taking service, Defendants have acted with legal malice. Defendants know their services are illegal and direct them towards conduct specifically prohibited under the ATI Agreements. Defendants have no legal justification for their illegal activities, which harm ATI and others, including nursing schools, students who do not cheat, and the public at large.

84. As a direct and proximate result of Defendants' actions, ATI has suffered and will continue to suffer harm. Such harm includes, but is not limited to, economic harm, reputational harm, and loss of goodwill, stemming from impairment of ATI's contractual and institutional relationships, loss of confidence in the security and reliability of its assessments, and other damaging impacts to be proven at trial.

85. Defendants' unlawful conduct, which is ongoing, has caused and will continue to cause irreparable injury to ATI, for which ATI has no remedy at law. Unless this Court restrains Defendants from continuing their unlawful proxy test-taking activities, these injuries will continue to occur in the future. In addition to damages, ATI seeks injunctive relief.

**Count III - Tortious Interference with Contract Under New York Law**
**Asserted by Elsevier Against All Defendants**

86. Elsevier incorporates by reference the allegations in paragraphs 1 through 76 as if fully set forth herein.

87. Elsevier maintains enforceable agreements, including with examinees registered to take their assessments, through the Student Conduct Agreement. The Student Conduct Agreement governs access to and use of Elsevier HESI content, including the content at issue in this case.

88. The Student Conduct Agreement requires the examinee to certify before testing that the examinee is the registered candidate and no one will assist the examinee or take the exam on their behalf, including any "other person, entity, bot, or computer." Examinees also agree they will not use any unauthorized materials or devices, communicate with other persons or computers during the exam, or copy or share exam content.

89. Defendants, acting through Kimang'a and/or their agents have knowledge of Elsevier's Student Conduct Agreement. Their proxy test-taking service is designed specifically to circumvent Elsevier's HESI exam rules and the terms in this agreement. Defendants' advertisements for their service make this clear. For instance, Defendants tell students they "bypass exam monitoring systems without raising suspicion." Accepting the Student Conduct Agreement terms is also a necessary step to gain access into Elsevier's secure platform. Therefore, when Defendants gain remote access to and assume control of the examinee's computer, they view the terms.

90. Defendants intentionally induce students to breach the Student Conduct Agreement, and use of Defendants' proxy test-taking service results in such breach. The service Defendants promote, sell, and provide to students likewise depends on such a breach occurring. Defendants solicit students to buy their service so students can achieve high scores on their exams, all while "sitting back, relaxing, and watching" while Defendants take the exam. No part of Defendants' proxy test-taking service is allowed under the Student Conduct Agreement.

91. In providing their proxy test-taking service, Defendants have acted with legal malice. Defendants know their services are illegal and direct them towards conduct specifically prohibited under the Student Conduct Agreement. Defendants have no legal justification for their

illegal activities, which harm Elsevier and others, including nursing schools, students who do not cheat, and the public at large.

92. As a direct and proximate result of Defendants' actions, Elsevier has suffered and will continue to suffer harm. Such harm includes, but is not limited to, economic harm, reputational harm, and loss of goodwill, stemming from impairment of Elsevier's contractual and institutional relationships, loss of confidence in the security and reliability of its assessments, and other damaging impacts to be proven at trial.

93. Defendants' unlawful conduct, which is ongoing, has caused and will continue to cause irreparable injury to Elsevier, for which Elsevier has no remedy at law. Unless this Court restrains Defendants from continuing their unlawful proxy test-taking activities, these injuries will continue to occur in the future. In addition to damages, Elsevier seeks injunctive relief.

**Count IV - Fraud Under Kansas Law**
**Asserted by ATI Against All Defendants**

94. ATI incorporates by reference the allegations in paragraphs 1 through 85 as if fully set forth herein. Defendants, acting through Kimang'a and/or their agent "proxy test-takers", have knowingly and intentionally made false statements and representations to ATI, including as to their identity, access credentials, and status as a registered examinee of ATI's assessments. Defendants have made these false statements and representations to gain access to ATI's testing platform, take the assessment instead of the student, and carry out the proxy test-taking business, all for commercial profit.

95. ATI has relied on Defendants' false statements and representations. Indeed, it is only through such conduct that Defendants were able to enter ATI's secure test environment. Had ATI known that Defendants and not the registered examinee, were accessing and taking its assessments, it would not have permitted the testing sessions to proceed. Defendants also make

these false statements and representations so that ATI will rely on them, and their illegal test-taking business can operate.

96. As advertised on Naxlex.com, the proxy test-taker does “all the exam work” while the students “pretend to do the exam.” Indeed, this proxy-test taking business is built on flagrant deception. Not only does this conduct intentionally deceive ATI, but it deceives nursing schools, other students, and the public.

97. As a direct and proximate result of Defendants’ false statements and representations, ATI has suffered and will continue to suffer harm. Such harm includes, but is not limited to, economic harm, reputational harm, and loss of goodwill, stemming from impairment of ATI’s contractual and institutional relationships, loss of confidence in the security and reliability of its assessments, and other damaging impacts to be proven at trial.

98. Defendants’ unlawful conduct, which is ongoing, has caused and will continue to cause irreparable injury to ATI, for which ATI has no remedy at law. Unless this Court restrains Defendants from continuing their unlawful proxy test-taking activities, these injuries will continue to occur in the future. Thus, in addition to damages, ATI seeks injunctive relief.

**Count V - Fraud Under New York Law**
**Asserted by Elsevier Against All Defendants**

99. Elsevier incorporates by reference the allegations in paragraphs 1 through 76 and 86-93 as if fully set forth herein. Defendants, acting through Kimang’a and/or their agents have knowingly and intentionally made false statements and representations to Elsevier, including as to their identity, access credentials, and status as a registered examinee of Elsevier’s assessments. Defendants have made these false statements and representations to gain access to Elsevier’s testing platform, take the assessment instead of the student, and carry out the proxy test-taking business, all for commercial profit.

100. Elsevier has relied on Defendants' false statements and representations. Indeed, it is only through such conduct that Defendants were able to enter Elsevier's secure test environment. Had Elsevier known that Defendants, and not the registered examinee, were accessing and taking its assessments, it would not have permitted the testing sessions to proceed. Defendants also make these false statements and representations so that Elsevier will rely on them, and their illegal test-taking business can operate.

101. As advertised on Naxlex.com, the proxy test-taker does "all the exam work" while the students "pretend to do the exam." Indeed, this proxy-test taking business is built on flagrant deception. Not only does this conduct intentionally deceive Elsevier, but it deceives nursing schools, other students, and the public.

102. As a direct and proximate result of Defendants' false statements and representations, Elsevier has suffered and will continue to suffer harm. Such harm includes, but is not limited to, economic harm, reputational harm, and loss of goodwill, stemming from impairment of Elsevier's contractual and institutional relationships, loss of confidence in the security and reliability of its assessments, and other damaging impacts to be proven at trial.

103. Defendants' unlawful conduct, which is ongoing, has caused and will continue to cause irreparable injury to Elsevier, for which Elsevier has no remedy at law. Unless this Court restrains Defendants from continuing their unlawful proxy test-taking activities, these injuries will continue to occur in the future. Thus, in addition to damages, Elsevier seeks injunctive relief.

**PRAYER FOR RELIEF**

By reason of the facts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

a. Judgment on the claims set forth above;

b. A finding that Defendants willfully infringed the Authentic Works identified in Exhibit A;

c. Damages pursuant to 17 U.S.C. § 504 in an amount up to the maximum provided by law or proven at trial;

d. Damages from Defendants' tortious interference with contract, including exemplary damages;

e. Damages from Defendants' fraud, including exemplary damages;

f. An order enjoining Defendants and other appropriate persons or entities under 17 U.S.C. § 502 and Federal Rule of Civil Procedure 65(d) from further infringing Plaintiffs' respective copyrights;

g. An order enjoining Defendants and other appropriate persons or entities under Federal Rule of Civil Procedure 65(d) from further tortiously interfering with Plaintiffs' contracts and engaging in fraud;

h. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of infringing content with documents relating to all such purchases and sales;

i. An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and files (and all derivative works thereof); all devices by means of which such infringing files have been created; and all other material bearing imitations, including confusingly similar variations, of Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 503;

j. An order seizing the domain names associated with Defendants' Infringing Sites and turning them over to Plaintiffs;

k. An award of Plaintiffs' reasonable attorney's fees, expenses, and costs of suit;

l. Prejudgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

m. Such other and further relief as the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED: August 20, 2026

Respectfully submitted,

Matthew J. Oppenheim
Michele H. Murphy (*pro hac vice* motion to be filed)
Danae Tinelli

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
Matt@oandzlaw.com
Michele@oandzlaw.com
Danae@oandzlaw.com

*Attorneys for Plaintiffs*